**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

NIGEL MARQUELL RANKIN,   )
                    )
          Plaintiff,   )
                    )
                    )      1:18cv353
          v.          )
                    )
RUFFIN SYKES, et al.,    )
                    )
          Defendants.   )

NIGEL MARQUELL RANKIN,   )
                    )
          Plaintiff,   )
                    )
                    )      1:18cv550
          v.          )
                    )
RUFFIN SYKES, et al.,    )
                    )
          Defendants.   )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

These cases come before the Court on Plaintiff's Applications to Proceed In Forma Pauperis (the "Applications") filed in Case Numbers 1:18cv353 and 1:18cv550 (Docket Entry 1) in conjunction with his pro se Complaints (Docket Entry 2).[1] For the reasons that follow, the Court will grant Plaintiff's instant Applications for the limited purpose of recommending dismissal of these actions

_____

[1] The Applications and Complaints in both cases bear the same Docket Entry numbers.

under 28 U.S.C. § 1915(e)(2) as frivolous, for failing to state a claim, and as barred by various immunity doctrines.

**LEGAL STANDARD**

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." <u>Nasim v. Warden, Md. House of Corr.</u>, 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [is] not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." <u>Nagy v. FMC Butner</u>, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

As to the first of these grounds, "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in

-2-

fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256–57 (some internal quotation marks omitted). In determining frivolousness, the Court may "apply common sense." Nasim, 64 F.3d at 954.

As to the second ground, a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[2]

The third ground for dismissal under 28 U.S.C. § 1915(e)(2)(B) generally applies to situations in which doctrines established by the United States Constitution or at common law immunize government entities and/or government personnel from liability for damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing eleventh-amendment immunity of states and state officials); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines); cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or

_____

[2] Although "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then quoting Iqbal, 556 U.S. at 679)).

severely limit the damage remedy" (internal quotation marks omitted)).

## INTRODUCTION

Plaintiff initiated the first action against six defendants: (1) "Ruffin Sykes" ("ADA Sykes"), (2) "Martin McGhee" ("Judge McGhee"), (3) "Patrice Hennit" ("Judge Hennit"), (4) "Catherine McCormick" ("Attorney McCormick"), (5) "Valerie Thomas" ("Deputy Clerk Thomas"), and (6) "Abigail Smith" ("Deputy Clerk Smith"). (Rankin v. Sykes, No. 1:18cv353, Docket Entry 2 (the "First Complaint") at 1 (M.D.N.C. Apr. 30, 2018).) In the second action, Plaintiff again named the original six defendants and added eight other defendants: (7) "Susan Frye" ("Clerk Frye"), (8) "Kalesha Barrino" ("Bondsman Barrino"), (9) "Officer Ferguson, P.D." ("Officer Ferguson"), (10) "Forsyth County Hall of Justice" (the "Hall of Justice"), (11) "City of Winston-Salem" ("Winston-Salem"), (12) Forsyth County District Attorney's Office," (13) "The Superior Court Clerk of Courts [sic] office" (the "Clerk's Office"), and (14) "personal capacity defendants [sic] bond insurer companies" (the "Insurance Companies"). (Rankin v. Sykes, No. 1:18cv550, Docket Entry 2 (the "Second Complaint") at 1 (M.D.N.C. June 25, 2018).)[3] The Second Complaint effectively incorporates the

---

[3] The Second Complaint includes "Forsyth County" in its list of "PARTIES," but not in the caption. (Compare Rankin, No. 1:18cv550, Docket Entry 2 at 3; and id. at 1. Therefore, "Forsyth County" does not qualify as a defendant. See Fed. R. Civ. P. 10(a) (requiring a complaint's caption to "name all the parties"); see

allegations of the First Complaint. (<u>Compare</u> <u>Rankin</u>, No. 1:18cv353, Docket Entry 2 at 3-14, <u>with</u> <u>Rankin</u>, No. 1:18cv550, Docket Entry 2 at 1-17.)[4]

## DISCUSSION

Although often hard to understand, the Complaints' allegations apparently relate to "[e]vents, occurrences, and transactions . . . [Plaintiff] affirms took place in Forsyth County in February, March, May and June of 2018 that give rise to [Plaintiff's] cry and supplication" (Docket Entry 2 at 2); more specifically, events that occurred in Forsyth County Superior Court on February 5, 2018, and March 26, 2018, and events leading up to and including Plaintiff's subsequent "arrest[s] and detainment on March 2, 2018, and June 1,

_____

also <u>Doe v. North State Aviation, LLC</u>, No. 1:17cv346, 2017 WL 1900290, at *1 (M.D.N.C. May 9, 2017) (unpublished) (refusing to address party not identified in caption). In any event, any claim against Forsyth County in the Second Complaint fails as a matter of law because it rests on the erroneous premise that Forsyth County constitutes "the Employer of Susan Frye, Ruffin Sykes, [and the Forsyth County District Attorney]," as well as the entity "responsible for the policies, practices, and customs of the Forsyth [C]ounty [H]all of Justice and the Forsyth County District [A]ttorney's Office, [and t]he Forsyth [C]ounty Superior Court Clerk of Courts [sic] Office." (<u>Rankin</u>, No. 1:18cv550, Docket Entry 2 at 3.) For reasons explained in the Discussion section below, the State of North Carolina employs Clerk Frye, ADA Sykes, and the Forsyth County District Attorney, and the Hall of Justice, District Attorney's Office, and Clerk's Office in Forsyth County all qualify as state agencies.

[4] Accordingly, the Discussion that follows focuses on the Second Complaint and parenthetical citations that follow refer to the Second Complaint unless they include a specific reference to case number 1:18cv353.

-6-

2018" (id. at 11).  The Court "cannot shoulder the full burden of fashioning a viable complaint for a *pro se* plaintiff," Simon v. Shawnee Corr. Ctr., Civ. Action No. 13-521-GPM, 2013 WL 3463595, at *1 (S.D. Ill. July 9, 2013) (unpublished), but liberal construction permits the conclusion that the Complaints seek relief, pursuant to 18 U.S.C. §§ 241, 242 and 42 U.S.C. §§ 1983, 1985, for Defendants' alleged conspiracy which deprived Plaintiff of certain constitutional rights.  (See, e.g., Docket Entry 2 at 2, 6-12.)[5] Even liberally construed, however, Plaintiff's claims fail as a matter of law.

**A. Sections 241 and 242 Claims**

As an initial matter, two of the statutes on which Plaintiff relies - Sections 241 and 242 - do not provide for a private cause of action.  Any claims predicated on Sections 241 and 242 thus fail as a matter of law, because "[o]nly the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 (the criminal analogue of 42 U.S.C. § 1983)," Cok v. Cosentino, 876 F.2d 1, 2

---

[5] The First Complaint also contains a vague reference to "crime remove to federal court under 28 USC 1443(1)" (Rankin, 18cv353, Docket Entry 2 at 14).  To the extent Plaintiff seeks to remove a state criminal case under Section 1443(1), that endeavor fails, because Section 1443(1) applies only upon a showing that the state court would deny Plaintiff a right "aris[ing] under a federal law 'providing for specific civil rights stated in terms of racial equality,'" Wilkins v. Rogers, 581 F.2d 399, 403 (4th Cir. 1978) (quoting Georgia v. Rachel, 384 U.S. 780, 792 (1966)) (internal emphasis and ellipsis omitted), and the First Complaint makes no such showing (see Rankin, 1:18cv353, Docket Entry 2).

(1st Cir. 1989) (citations omitted).  See Andrews v. Heaton, 483 F.3d 1070, 1076 (10th Cir. 2007) ("[D]ismissal of [plaintiff's] claims . . . alleging violations of [Section 241 and other statutes in Title 18 and Title 26 of the United States Code] was proper because these are criminal statutes that do not provide for a private right of action and are thus not enforceable through a civil action."); Tribble v. Reedy, No. 89-6781, 888 F.2d 1387 (table), 1989  126783 (4th Cir. Oct. 20, 1989) (unpublished) (affirming dismissal of civil action "alleg[ing] violations of 18 U.S.C. §§ 241, 1341 and 1343 . . . [because u]nless there is a clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute").  Accordingly, the Court should dismiss Plaintiff's claims to the extent they rely on those statutes.

## B. Section 1983 Claim

Next, to state a claim for relief under Section 1983, Plaintiff must assert "that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999).[6]  To

---

[6] Specifically, Section 1983 provides, in pertinent part, that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States

plead a civil conspiracy under Section 1983, Plaintiff must show that (1) Defendants acted jointly in concert, (2) to commit some overt act in furtherance of the conspiracy, which (3) resulted in the deprivation of Plaintiff's constitutional rights.  See Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996).  In this regard, courts can treat a private party acting in concert with state officials in a conspiracy as acting under color of law for Section 1983 purposes — even if the state officials possess immunity.  See Dennis v. Sparks, 449 U.S. 24, 27–28 (1980).

However, Plaintiff must raise his Section 1983 claims "against a 'person'" capable of committing a violation of his constitutional rights.  Conley v. Ryan, 92 F. Supp. 3d 502, 519 (S.D. W. Va. 2015) (quoting 42 U.S.C. § 1983).  As "Congress did not exercise its power to abrogate a state's Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983," Coffin v. South Carolina Dep't of Soc. Servs., 562 F. Supp. 579, 585 (D.S.C. 1983), "a State is not a person within the meaning of § 1983," Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989).

---

or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added).

Construed liberally, the Complaints allege that Defendants

conspired together to deprive Plaintiff of his

> Constitutional rights under United States Constitutional
> Amendment 14 section 1 privileges and immunities clause,
> the equal protection clause, the due process clause was
> violated such as the right to be given a specific trial
> date and time and assistance adequate notice, the right
> to have [his] appearance record[ed] like other
> defendant[s] who made physical appearance[s] in Superior
> Court room 6-B on February 5 and March 26, 2018 in
> Forsyth County, the right to be free from unlawful
> arrest, the right to inquire into the restraints on
> [Plaintiff's] liberty and others mentioned in this
> Affidavit.

(Id. at 12.) According to the Complaints, Defendants committed

this deprivation through

> proceeding[s] [which] were not fair and impartial
> pretrial hearings because [Plaintiff] wasn't allowed to
> ask questions, have Constitutionally effective counsel,
> wasn't given adequate notice because [Plaintiff] was told
> of [his] trial date the day of and given 1 hour to arrive
> at the last minute, then had an order for an arrest
> issued 2 times, each for days [Plaintiff] has proof [he]
> made a physical appearance.

(Id.)

In particular, the Complaints assert that:

> [Plaintiff] affirms that [he] was physically
> present, [was] called, answered, spoke and [was] seen in
> Superior Court room 6-B on 2/5/18 and 3/26/18. For
> reasons to be determined by an Equitable Ruling,
> [Plaintiff] has shockingly been arrested, and forced to
> make bond for both appearances, consecutively, and has
> had [his] verbal pleadings for correction and relief
> ignored by [his] Court appointed Counsel and Bondsman
> (Kalesha) who both were verbally made aware of the
> deprivations while being knoedgeable of [Plaintiff's]
> appearances. [Plaintiff's] physical appearance was not
> recorded or given true credit by [ADA Sykes], [Deputy
> Clerk Thomas], or [Judge McGhee] or [Judge Hennit] on 2/5

-10-

and 3/26. This first omission was followed by an order
for arrest for failure to appear with a 4,000$ [sic]
secured bond, which upon information and belief, was
filled [sic] 2/27/2018, and [Plaintiff] did have a note
from the warrant squad left at [his] house dated for
2/27/2018. The second omissions [sic] was followed by an
order for arrest for failure to appear with a 8,000$
[sic] secured bond, which upon information and belief,
was filled [sic] 3/28/2018, and [Plaintiff] did have a
note from the warrant squad left at [his] house for
3/28/2018.

(Id. at 2.)

In addition, the Complaints allege that:

[Defendants'] mind[s] w[ere] guilty intending
because they all are schooled in law and have courtroom
experience and Congress put the United States
Constitution and Federal Statute to protect U.S. Citizens
from injuries and invasions of natural and civil rights.
They took oath to uphold the positive law and United
States Constitution and told YHWH and man they would be
honorable in doing so. There was no cause of
justification for these actions because [Plaintiff]
appeared both times, after taking off work for over 16
hours, sitting in Court room 6-b long hours, talking face
to face to [ADA] Sykes, [Judge] McGhee, [Judge] Hennit,
and in front of [Deputy Clerk] Thomas and [Deputy Clerk]
Smith, just to be later arrested as if [Plaintiff] never
physically spoke in front of the stenographer Tanya Vines
the other people [Plaintiff] named, while [Plaintiff]
was inside Court room 6-b. This process of telling
[Plaintiff] that [Plaintiff] can't get Court Appointed
counsel and not letting [Plaintiff] get discovery
documents regarding the complaining officer affidavits,
not telling [Plaintiff] what day or time [Plaintiff's]
trial date is and calling me less than 48 hours after
[Plaintiff] made an appearance at scheduled Court date,
to tell [Plaintiff] that [he] has 1 hour to be in court
or [he] will be arrested and maybe given a bail is a
constitutionally inadequate process because [Plaintiff]
is not given a fair chance to prepare for trial when [he]
could be facing jail time for a traffic citation that
[Plaintiff] has paid the Department of Motor Vehicles
fine for already and made attempts to take care of the
lawful way. Being arrested and having to use up most of

-11-

my savings after [Plaintiff] is already taking days out
of work to be in court in not fair to [Plaintiff] or any
under [sic] person put in a hard spot like [Plaintiff],
especially when on both those court dates other people
got specific dates and times that were at least a week
away.

. . . .

Defendants abused discretion by going against oath
to uphold Constitution and ensure justice by doing the
complete opposite by not following the commands Congress
gave to treat [Plaintiff] fairly and use safe steps to
make sure things are done the lawful way. . . .

. . . .

The agreements or communications, consultation,
cooperation, command from which an agreement can be
conferred are that they all know the 14th Amendment
clauses mentioned in this Complaint yet no [o]ne stepped
in to ensure Justice was properly administered. They got
paid for coming to work and used their job position to
carry out a plan to cause [Plaintiff] to go to jail. They
are connected to the injury, damage and liability because
had they all mentioned this, One hour standby and
continued to use this custom to cause [Plaintiff] to have
hardly any chance to prepare for trial.

. . . .

Defendants [ADA Sykes] and [Attorney McCormick]
acting individually and in concert, deliberately and
recklessly attempted to coerce [Plaintiff] into taking a
guilty plea despite no complainant being present and
request for an equitable determinations in violation of
[Plaintiff's] 14th amendment right not to be deprived of
liberty without due process of law and to a fair criminal
trial.

. . . .

Defendants [Judge McGhee] and [Judge Hennit] acting
individually and in concert, fabricated information,
disregarded known grounds for dismissal, and deliberately
issued arrest orders for [Plaintiff] in violation of
[Plaintiff's] 4th amendment right to liberty interest,

14th amendment right not to be deprived of liberty
without due process of law and to a fair criminal trial.

. . . .

       Defendants [Deputy Clerk Thomas] and [Deputy Clerk
Smith] acting individually and in concert, deliberately
did not note [Plaintiff's] appearance for the record, in
violation of [Plaintiff's] 14th amendment right not to be
deprived of liberty without due process of law and to a
fair criminal trial.

. . . .

       All named defendants, acting individually and in
concert, deliberately, despite knowing probable cause did
not exist to arrest, continually issued unlawful orders
for arrest and chose to enforce those orders while
simultaneously choosing to prosecute a complainant-less
claim, and caused to be arrested, continually detained
and prosecuted for false failure to appear allegations in
violation of [Plaintiff's] 14th amendment rights not to
be deprived of liberty without due process of law, equal
protection under the law, privileges, and immunities and
to a fair criminal trial.

(Id. at 11-15 (bullet points omitted).)

### i. ADA Sykes

Turning to the specific allegations against each Defendant,

Plaintiff has alleged that, with "authority to act as district

attorney . . . , [ADA Sykes] asked [Attorney McCormick] to ask

Plaintiff to plead guilty and just pay cost and fines without

imposing sentence given." (Id. at 3.) The Complaints also state

that ADA Sykes chose not to "dismiss the [Plaintiff's] case when

the complaining [officer] failed to appear." (Id. at 4.)

Additionally, according to the Complaints, ADA Sykes "made

[Plaintiff] stay in the audience when [Plaintiff] tried to walk to

the table where the other defendants went that day." (Id. at 8.)

Further, Plaintiff has asserted that:

> [ADA Sykes] routinely, notoriously, as a matter of policy, custom, and pattern and practice violated constitutional and ethical norms by deliberately and recklessly failing to investigate known grounds for dismissal in order to permit [ADA Sykes] to prosecute [Plaintiff] without any form of equitable relief and engaged in additional acts of prosecutorial misconduct aimed at securing convictions at all cost.

(Id. at 13.) Finally, "[Plaintiff], upon information and belief[], believes [ADA Sykes] was attempting to escape some type of financial obligation on his bond for the damages [Plaintiff] had suffered from several injuries to [Plaintiff's] personal property, including but not limited to [Plaintiff's] natural and civil rights." (Id. at 9.)

Here, the Complaints seek damages from a state court prosecutor and, further, fail to offer any factual allegations that would suggest that ADA Sykes acted outside of the judicial phase of the criminal prosecution. Coordinately, the Supreme Court has held that "absolute immunity appl[ies] with full force" to a prosecutor's activities that remain "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see also Polidi v. Bannon, 226 F. Supp. 3d 615, 620 (E.D. Va. Dec. 28, 2016) ("Prosecutors are absolutely immune from suits for money damages for conduct in or connected with judicial proceedings.") Accordingly, the Court should dismiss

the Complaints' claim(s) for damages against ADA Sykes in his individual capacity.

To the extent the Complaints assert an official capacity Section 1983 claim for damages against ADA Sykes, such claim would fail as frivolous, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," <u>Will</u>, 491 U.S. at 71, and "a State is not a person within the meaning of § 1983," <u>id.</u> at 64. In North Carolina, district attorneys and their assistants act as arms of the State. <u>See</u> N.C. Gen. Stat. §§ 7A-60 (creating prosecutorial districts and position of district attorney), 7A-61 (empowering district attorneys to "prosecute in a timely manner in the name of the State all criminal actions"), 7A-63 (providing for assistant district attorneys to aid district attorney), 7A-65 (establishing compensation for district attorneys and assistant district attorneys). As a result, any official capacity damages claim under Section 1983 against ADA Sykes suffers from an obvious fatal defect, as "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," <u>Will</u>, 491 U.S. at 71.

The foregoing analysis leaves only the issue of injunctive and/or declaratory relief against ADA Sykes (in either his

individual or official capacity).[7]  The First Complaint makes general reference to equitable relief at several points (see Rankin, No. 18cv353, Docket Entry 2 at 9-11), but, in terms of specifics, mentions only "an injunction to prevent further civil right derivations [sic] and to rectify past wrongs that occurred on these times complained about" (id. at 10).  The Second Complaint repeats that demand (see Docket Entry 2 at 17) and adds the following requests:

1) "a preliminary injunction to restrain actors in [F]orsyth [C]ounty from detaining [Plaintiff] . . . unlawfully without due process so that [he] can peacefully prepare for [his] trial injunction that will [e]njoin judge[s] from ordering [Plaintiff's] detention" (id. at 17-18);

2) "a declaratory judgment that [Defendants'] practices violate [the] United States Constitution and Federal United States Codes" (id. at 18);

3) "an injunction or decree making judges and clerks expunge records of unlawful arrest and to [d]ischarge these [c]harges of

---

[7] "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."  Will, 491 U.S. at 71 n.10 (internal quotation marks omitted).

DWLR [driving while license revoked] because of the deprivations suffered already" (id.);

4) "a permanent injunction guaranteeing [Plaintiff] peace unless in gross violation of the Law" (id.); and

5) "a [d]eclaratory judgment confirming and asserting [Plaintiff's] rights, including but not limited to . . . not be victimized by wholly arbitrary acts . . . [or] treated different . . . for traffic citations[,] . . . to be afforded equal protection of the Law, due process protection of the Law, and all applicable statutory and equitable benefits, rights, privileges, immunities, and protections, . . . to life, liberty, and property[,] . . . to accept the beneficial effects of . . . being classified by the courts as a black natural person and United States Citizen and North Carolina Citizen[,] . . . to not have [his] protected rights improperly invaded by acts of [ADA] Sykes and any other Public Actor and their agents[,] . . . to seek redress for such wrongs such as . . . selective enforcement of laws, exculpatory evidence not being admitted and ministerial usurpation and oppression[,] . . . to have [his] appearances duly recorded like others[,] . . . to a preliminary and permanent injunction to prevent reasonable threat of repeated constitutional violations[,] . . . to free expression and personal liberty, . . . to bodily integrity[,] . . . to live peaceably in home without

being harassed or assaulted, [to] use public sidewalks and streets without being assaulted, kidnapped, and thrown in a dungeon[,] . . . to have personal rights, property rights, civil rights, and civil liberties protected from unlawful invasions, . . . to judicially assert actions, . . . [and] to recoup in action to enforce liability" (id.).

The Court's authority to afford declaratory relief arises only "[i]n a case of actual controversy within its jurisdiction, . . . upon the filing of an appropriate pleading . . . ." 28 U.S.C. § 2201(a). Moreover, "[d]eclaratory judgments are not meant simply to proclaim that one party is liable to another." Johnson v. McCuskey, 72 F. App'x 475, 478 (7th Cir. 2003) (citing Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1553-54 (Fed. Cir. 1994) (en banc)). Rather, declaratory judgments "define the legal rights and obligations of the parties in the anticipation of some future conduct." Johnson 72 F. App'x at 477 (emphasis added). In this regard,

> under the facts alleged [in a complaint], there must be a substantial continuing controversy between parties having adverse legal interests. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. The remote possibility that a future injury may happen is not sufficient to satisfy the "actual controversy" requirement for declaratory judgments.

Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985) (citations

omitted). "Basically, the question in each case is whether the

facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific

Coal & Oil Co., 312 U.S. 270, 273 (1941).

Here, the requests for relief arise from Plaintiff's belief

that Defendants' acts, or their failures to act, resulted in his

wrongful arrests. (See Docket Entry 2.)  In particular, he asserts

that

> [a]s of 6/25/2018, [his] most recent scheduled
> appearance, [Attorney McCormick] and [ADA Sykes] . . .
> both refused to give [Plaintiff] an adequate and fair
> notice of trial. . . . [Plaintiff] feels that the
> conspiracy to keep [him] deprived of [his] rights is
> still in motion and [PLAINTIFF] NEEDS EMERGENCY
> ASSISTANCE because [he] is in fear of [his] civil and
> natural rights being violated and [of] suffering more
> injuries because of this conspiracy.

(Id. at 13).

Although Plaintiff may believe that he will suffer future

injury, the factual matter provided reflects nothing more than a

"speculative threat of future injury," which falls short of

"'actual controversy' requirement for declaratory judgments,"

Emory, 756 F.2d at 1552 (quoting 28 U.S.C. § 2201).  "Considering

that [P]laintiff's allegations do not reflect an actual, continuing

controversy with . . . [D]efendant[s] that will result in a future

injury to [Plaintiff], [P]laintiff's claim for declaratory relief is without legal merit and is therefore frivolous." May v. Patterson, Civ. Action No. 12-703, 2013 WL 4776345, at *6 (S.D. Ala. Sept. 5, 2013) (unpublished).

Furthermore, as quoted above, the Complaints' request for injunctive relief suffers from gross overbreadth. That defect alone warrants dismissal of that aspect of Plaintiff's claim against ADA Sykes. See generally PMB Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir. 2011) ("[The Fourth Circuit] will vacate an injunction if it . . . does not carefully address only the circumstances of the case."); Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 217 (4th Cir. 1993) ("Although injunctive relief should be designed to grant the full relief needed to remedy the injury to the prevailing party, it should not go beyond the extent of the established violation.").

Additionally, "[w]hen a plaintiff seeks injunctive relief, the 'injury in fact' element of standing requires more than simply an allegation of [a] defendant's prior wrongful conduct." Harty v. Luihn Four, Inc., 747 F. Supp. 2d 547, 551-52 (E.D.N.C. 2010) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983)). A plaintiff must demonstrate "a real or immediate threat that the plaintiff will be wronged again - a likelihood of substantial and immediate irreparable injury." Lyons, 461 U.S. at 111. In that regard,

> bare allegations of what is likely to occur are of no
> value since the court must decide whether the harm will
> in fact occur.  The movant must provide proof that the
> harm has occurred in the past and is likely to occur
> again, or proof indicating that the harm is certain to
> occur in the near future.

Bloodgood v. Garraghty, 783 F.2d 470, 476 (4th Cir. 1986).  Here,

the Complaints offer only "bare allegations of what is likely to

occur," id., and do not show "a likelihood of substantial and

immediate irreparable injury," Lyons, 461 U.S. at 111.

Abstention principles articulated in Younger v. Harris, 401

U.S. 37 (1971), further compel dismissal of the Complaints'

requests for injunctive and/or declaratory relief as frivolous.

"In Younger, the Supreme Court detailed our 'national policy

forbidding federal courts to stay or enjoin pending state court

proceedings except under special circumstances.'"  Nivens v.

Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006) ("Nivens II") (quoting

Younger, 401 U.S. at 41); see also Samuels v. Mackell, 401 U.S. 66,

73 (1971) (holding that, "where an injunction would be

impermissible under [Younger abstention] principles, declaratory

relief should ordinarily be denied as well")).  The Younger

doctrine generally requires abstention by a federal court "if (1)

there is an ongoing state judicial proceeding brought prior to

substantial progress in the federal proceeding; that (2) implicates

important, substantial, or vital state interests; and (3) provides

adequate opportunity to raise constitutional challenges."  Nivens

II, 444 F.3d at 241.

As to the first of those elements, Plaintiff's allegations (as quoted above) indicate that proceedings in state criminal cases began before the filing of the Complaints and remain ongoing. As to the second element, the Fourth Circuit has held that "North Carolina has a very important, substantial, and vital interest in preventing violations of its criminal laws." Nivens v. Gilchrist, 319 F.3d at 151, 154 (4th Cir. 2003) ("Nivens I"). As to the third element, the Fourth Circuit has ruled that "ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." Gilliam v. Foster, 75 F.3d 881, 903 (4th Cir. 1996).

Because the basic elements triggering Younger abstention arise in this case, this Court could entertain Plaintiff's claims only if "(1) 'there is a showing of bad faith or harassment by state officials responsible for the prosecution'; (2) 'the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions'; or (3) 'other extraordinary circumstances' exist that present a threat of immediate and irreparable injury," Nivens II, 444 F.3d at 241 (quoting Kugler v. Helfant, 421 U.S. 117 (1975)).

Here, the Complaints (again, as quoted above) do not contain factual allegations that would bring this case within any of the foregoing exceptions. Plaintiff must challenge the legitimacy of the charges against him in state criminal court and then, if

necessary, pursue appropriate relief.  See Ballenger v. Owens, 352 F.3d 842, 845-46 (4th Cir. 2003).

In sum, no aspect of the Complaints' Section 1983 claim(s) against ADA Sykes may proceed.

### ii. Judge McGhee and Judge Hennitt

With regard to Plaintiff's individual capacity claims against Judge McGhee and Judge Hennit, the Complaints assert as follows: During the first hearing at issue, held on February 5, 2018, in front of Judge McGhee, Plaintiff requested "in writing a ruling what [his] rights are from [his] Father in Heaven and Congress, and [asked] about the issue at hand and that if [Attorney McCormick] could not do much for being 'stand-by counsel'. . ., could [Judge McGhee] make her [Plaintiff's] regular counsel." (Docket Entry 2 at 4.)  Judge McGhee "told [Plaintiff] that he had "waived [his] rights to counsel," denied his request for appointment of counsel, told Plaintiff that "[Attorney] McCormick would remain assistant counsel," and directed Plaintiff to "leave the courts and be on a [one hour] standby."  (Id.)  "[Plaintiff] resisted the offer to leave and told [Judge McGhee] that [Plaintiff] was confused as to [Plaintiff's] trial status and date and needed more clarity." (Id.)  "[Judge McGhee] told [Plaintiff] to inquire with assistant counsel and to leave the court room before [Plaintiff] was held in criminal contempt."  (Id.)  The Complaints also allege that

> [Judge] McGhee did not dismiss the complaint and chose to
> continue prosecuting [Plaintiff] for this traffic

-23-

> infraction against [Plaintiff] despite the complainant
> failing to make any Superior Court appearance. [Judge
> McGhee] also issued a [sic] order for arrest for failure
> to appear on 2/5/18 with a 4000$ [sic] secured bond even
> though [Plaintiff] spoke directly to [Judge] McGhee and
> looked directly in his eyes as he threatened [Plaintiff]
> with contempt of court on 2/5/18.

(Id. at 8.)

During Plaintiff's hearing before Judge Hennit on March 26, 2018, Plaintiff objected to the setting of a trial date. (Id. at 6.) As Plaintiff voiced his objections, Judge Hennit stopped Plaintiff and advised him that anything he said could be used against him. (Id.) As such, Plaintiff

> realized that [Judge Hennit] was in on it too obviously.
> [Plaintiff] began to get enraged at the blatant
> mistreatment and unfairness of [Judge Hennit]. . . .
> Similar events that happen[ed] with [Judge] McGhee
> happened in this matter. [Plaintiff] was told to leave,
> and threatened with criminal contempt, only this time the
> rage made [him] shout that [he would] file claim [sic]
> for this deprivation and [Judge Hennit] said something
> about jail.

(Id. at 6.) Moreover,

> [Judge] Hinnit [sic] did not dismiss the complaint and
> chose to continue prosecuting [Plaintiff] despite the
> complainant failing to make any Superior Court
> appearance. [Judge Hennit] also issued an order for
> arrest for failure to appear on 3/26/18 with a 4000$
> [sic] secured bond even though [Plaintiff] spoke directly
> to [Judge Hennit] and looked directly in her eyes as she
> threatened [Plaintiff] with contempt of court on 3/26/18.
> She even told [Plaintiff] she would note [his] appearance
> but later issued an order for arrest the same day she
> talked to [Plaintiff] face to face in front of [ADA
> Sykes] and [Deputy Clerk Smith].

(Id. at 8.)

Notably, the Complaints allege that both Judge McGhee and Judge Hennit presided, as judges, over Plaintiff's state criminal cases. (See id. at 3, 6.) "Judges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability claims," In re Mills, 287 F. App'x. 273, 279 (4th Cir. 2008) (emphasis added), "even if such acts were allegedly done either maliciously or corruptly," King v. Myers, 973 F.2d 354, 356 (4th Cir. 1992) (citing Pierson, 386 U.S. 547, 554 (1967)). See also Mireles v. Waco, 502 U.S. 9, 11 (1991) (stating that "judicial immunity is an immunity from suit, not just from ultimate assessment of damages"). To determine whether an action constitutes a "judicial act" protected by judicial immunity, the Court must consider "whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity." King, 973 F.2d at 357. Thus, a plaintiff can overcome the judicial immunity bar only if the judge's "actions were non-judicial or the actions were judicial but were taken without jurisdiction." Evans v. Downey, No. 1:15-CV-117, 2016 WL 3562102, at *2 (W.D. Ky. June 24, 2016) (unpublished) (citing Mireles, 502 U.S. at 13).

Here, the Complaints do not allege that either Judge McGhee or Judge Hennit lacked jurisdiction over Plaintiff's cases. (See Docket Entry 2 at 1-3.) The actions Plaintiff challenges - issuing orders, conducting hearings, and the like - all qualify as

judicial.  See King, 973 F.2d at 357.  Further, even though Plaintiff alleges that Judge McGhee and Judge Hennit conspired with other named Defendants to deny Plaintiff's constitutional rights, judicial immunity still applies.  See id. at 356 (ruling that judicial immunity attaches even where a judge's actions qualify as malicious or corrupt); see also Mikhail v. Kahn, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2014) (holding that "[j]udges are absolutely immune from suit" for money damages arising from their judicial acts, even if such acts took "place *ex parte* and without notice or a hearing" (internal quotation marks omitted)).  Accordingly, both Judge McGhee and Judge Hennit enjoy absolute judicial immunity from Plaintiff's damages claims.

Moreover, this immunity extends to Plaintiff's request for injunctive relief (whether brought in connection with individual capacity or official capacity claims).  See Clay v. Osteen, No. 1:10cv399, 2010 WL 4116882, at *3-4 (M.D.N.C. Oct. 19, 2010) (unpublished) (analyzing judicial immunity doctrine in monetary damages and injunctive relief contexts), recommendation adopted, slip op. (M.D.N.C. Nov. 17, 2010); see also, e.g., Pearson v. District Att'y Billy W., No. 5:16-CT-3182, 2017 WL 5163368, at *5 (E.D.N.C. June 26, 2017) (unpublished) ("[J]udges have absolute immunity from a claim for damages arising out of their judicial actions.  Not only are judge[s] immune from claims for monetary damages, they are immune from requests for injunctive relief."

(citations omitted)), report and recommendation adopted sub nom. Pearson v. West, No. 5:16-CT-3182, 2017 WL 5163235 (E.D.N.C. Nov. 7, 2017) (unpublished).[8]

Finally, any official capacity claim for damages against Judge McGhee and Judge Hennit fails as a matter of law because the State of North Carolina employs them, see N.C. Gen. Stat. §§ 7A-3 (bringing all court operations under control of state), 7A-41 (establishing superior courts and providing for superior court judges), 7A-130 (establishing district courts), 7A-132 (providing for district court judges). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," Will, 491 U.S. at 70, and "a State is not a person within the meaning of § 1983," id. at 64.

For all these reasons, the Court should dismiss Plaintiff's Section 1983 claims against Judge McGhee and Judge Hennit.

### iii. Clerk Frye, Deputy Clerk Thomas, and Deputy Clerk Smith

With respect to Plaintiff's claims against Clerk Frye, Deputy Clerk Thomas, and Deputy Clerk Smith, the Complaints assert that:

---

[8] To the extent Plaintiff has sought declaratory relief against Judge McGhee and Judge Hennit, his request fails as a matter of law. As explained above in the discussion regarding Plaintiff's claims against ADA Sykes, the Complaints do not present proper requests for "[d]eclaratory judgments [which] are meant to define the legal rights and obligations of the parties in anticipation of some future conduct." Clay, 2010 WL 4116882, at *4 (internal quotations marks omitted).

Clerk [ ] Frye is held personally liable and on liable
official bond for misfeasance of [Deputy Clerk] Thomas,
clerk present on 2/5/2018 in Superior Court room 6B and
for misfeasance of [Deputy Clerk] Smith, clerk present on
2/5/2018 in Superior Court room 6B. [Clerk] Frye Name
[sic] was signed to Each order for arrest for failure to
appear.

[Deputy Clerk] Thomas failed to note [Plaintiff's]
appearance for the record, docket, and calendar on 2/5,
creating the illusion that [Plaintiff] made no physical
appearance subsequently resulting in a warrant for arrest
for failure to appear.

[Deputy Clerk] Smith failed to note [Plaintiff's]
appearance for the record, docket, and calendar on 3/26,
creating the illusion that [Plaintiff] made on physical
appearance subsequently resulting in a warrant for arrest
for failure to appear.

(Docket Entry 2 at 8, 9.)

Based on these allegations, quasi-judicial immunity shields
Clerk Frye, Deputy Clerk Thomas, and Deputy Clerk Smith from
Plaintiff's individual capacity claims. Such immunity exists "due
to the danger that disappointed litigants, blocked by the doctrine
of absolute immunity from suing the judge directly, will vent their
wrath on clerks, court reporters, and other judicial adjuncts."
Ward v. Plymale, Civ. Action No. 3:12-6186, 2013 WL 6164277, at *19
(S.D. W. Va. Nov. 25, 2013) (unpublished) (internal quotation marks
omitted). This "immunity extends to those persons performing tasks
so integral or intertwined with the judicial process that these
persons are considered to be figurative arms of the very commanding
judge who is immune." Shelton v. Wallace, 886 F. Supp. 1365, 1371
(S.D. Ohio 1995); see also Jackson v. Houck, 181 F. App'x 372, 373

(4th Cir. 2006) ("Absolute immunity applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function."). Quasi-judicial immunity also forecloses any claim for injunctive relief against Clerk Frye, Deputy Clerk Thomas, and Deputy Clerk Smith. See Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999) (barring injunctive relief against a quasi-judicial official); Gilmore v. Bostic, 636 F.Supp. 2d 496, 506 (S.D. W.Va. 2009) (same) (collecting cases).

To the extent the Complaints assert official capacity Section 1983 claims for damages against Clerk Frye, Deputy Clerk Thomas, and Deputy Clerk Smith, such claims would fail as frivolous, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," Will, 491 U.S. at 71, and "a State is not a person within the meaning of § 1983," id. at 64. In North Carolina, "[t]he clerk of superior court is a full-time employee of the State," N.C. Gen. Stat. § 7A-101(a), and "[a]ll personnel in the clerk's office are employees of the State," N.C. Gen Stat. § 7A-102(a). As a result, any official capacity claim against Clerk Frye, Deputy Clerk Thomas, and Deputy Clerk Smith, under Section 1983, suffers from an obvious fatal defect, as "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will, 491 U.S. at 71.

Accordingly, the Court should dismiss the Section 1983 claims against Clerk Frye, Deputy Clerk Thomas, and Deputy Clerk Smith.

### iv. Attorney McCormick and Bondsman Barrino

Regarding Attorney McCormick, the Complaints assert that Plaintiff "felt [Attorney McCormick] was a party to the conspiracy to deprive [Plaintiff] of federal liberties because [Plaintiff] would not do things their customary erroneous illegal and unfair way." (Docket Entry 2 at 6; see also id. at 14 (asserting that ADA Sykes and Attorney McCormick "acting individually and in concert, deliberately and recklessly attempted to coerce [Plaintiff] into taking a guilty plea").) Further, Plaintiff has alleged that "[Attorney] McCormick has not made any motions on [Plaintiff's] behalf did [sic] not make any attempt to correct the courts [sic] error in issuing the order for arrest at any time before or after this arrest have [sic] been made even though she had knowledge of [Plaintiff's] appearance and the order for arrest." (Id. at 8.) It bears noting, however, that the Complaints also state that Attorney McCormick served as Plaintiff's "stand-by counsel" and informed him that, in such capacity, she "could not make motions for [him] or speak for [him], [she could] only answer [his] questions." (Id. at 4.) Finally, as to Bondsman Barrino, the Complaints assert that

> [Bondsman] Barrino knew of the unlawful arrest pursuant to documents issued to her by the courts for a warrant issued for [failure to appear] on 3/26/2018, but [she] tried to passively coerce with the threat of

'things getting bad for [Plaintiff]' to turn [himself] in
with out time to get [his] affairs in order for an [sic]
bogus warrant she alleges was set for a appearance docket
for 3/28/2018 and that the warrant was not for 3/26/2018.

(Id. at 9.)

The foregoing conclusory allegations fail to state viable
conspiracy claims against Attorney McCormick and Bondsman Barrino.
See Iqbal, 556 U.S. at 680 ("[T]he plaintiffs' assertion of an
unlawful agreement [i]s a legal conclusion and, as such, [i]s not
entitled to the assumption of truth.") (internal quotation marks
omitted)).  Nor can Plaintiff maintain a non-conspiracy Section
1983 claim against Attorney McCormick or Bondsman Barrino, because
such claims require "state action," Hall v. Quillen, 631 F.2d 1154,
1155 (4th Cir. 1980), and the Complaints fail to establish that
either Attorney McCormick or Bondsman Barrino qualify as state
actors.  The claims against Attorney McCormick and Bondsman Barrino
therefore fail as a matter of law.  See, e.g., American Mfrs. Mut.
Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (holding that Section
1983's under-color-of-state-law requirement "excludes from its
reach merely private conduct, no matter how discriminatory or
wrongful" (internal quotation marks omitted)).

To prove that a defendant acted under color of state law, "the
person charged must either be a state actor or have a sufficiently
close relationship with state actors such that a court would
conclude that the non-state actor is engaged in the state's
actions." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599,

615 (4th Cir. 2009). Although a private entity may satisfy that condition by performing functions "traditionally the exclusive prerogative of the State," Jackson v. Metropolitan Edison Co., 419 U.S. 345, 353 (1974), the Complaints lack any indication that either Attorney McCormick or Bondsman Barrino's actions so qualify (see Docket Entry 2 at 3-9, 14-15). To the contrary, the actions attributed to Attorney McCormick and Bondsman Barrino fall outside the reach of Section 1983. See Erwin v. Byrd's Bail Bonding, Civ. Action No. 2:10-1948-CWH-RSC, 2010 WL 3463881, *2 (D.S.C. Aug. 5, 2010) (unpublished)("It is well settled that bail bonding companies and bail bondsmen do not act under color of state law."), recommendation adopted, 2010 WL 3489113 (D.S.C. Sept. 3, 2010); Kirk v. Curran, No. 3:09CV301-3, 2009 WL 2423971, *1 (W.D.N.C. Aug. 4, 2009) (unpublished) ("[N]either public defenders nor private criminal attorneys are 'state actors' under [Section] 1983."), aff'd, 357 F. App'x 529 (4th Cir. 2009).

Given these considerations, the Court should dismiss the Section 1983 claims against Attorney McCormick and Bondsman Barrino.

### v. Officer Ferguson

As to Officer Ferguson, the Complaints allege that, on June 3, 2018, "[Officer] Ferguson, communicating with [Bondsman Barrino] and told [sic] to come to [Plaintiff's] job and arrest [Plaintiff] did so and attempted to have other officers make the arrest and transport [Plaintiff] to the detention center, but mistreated

[Plaintiff] and exposed [Plaintiff] unlawfully and intentionally to air pollution and [Plaintiff] suffered damages." (Docket Entry 2 at 9.) In this regard, Plaintiff alleges that, after Officer Ferguson arrested Plaintiff,

> [Officer] Ferguson moved [Plaintiff] to the back of his car, that was still on and . . . the engine was running and exhaust fumes were leaving the muffler and tailpipes in the rear of the vehicle. [Plaintiff] asked [Officer] Ferguson to move [Plaintiff] because the fumes and heat from the exhaust was making [him] nauseous. [Officer Ferguson] said [Plaintiff] would be ok. [Plaintiff] asked [Officer Ferguson] could [Plaintiff] make a phone call because [he] was very fearful and wanted someone to know what was happening to [him] before [he] was thrown away in a dungeon for a month or so. [Officer Ferguson] said yes and allowed [Plaintiff] to tell [sic] enter the security code in [Plaintiff's] phone. As [Plaintiff] called Trisha [he] began to sweat profusely and asked [Officer] Ferguson to move [Plaintiff] away from the exhaust. [Officer Ferguson] refused. [Plaintiff] began to faint and [Officer Ferguson] got angry and told [Plaintiff], shouting, "don't fall, stop falling, you better not fall!" [Plaintiff] remember[s] waking on the ground with who [he] thought was [Officer] Ferguson, holding [him] up by the shoulders while [Plaintiff's] lower body was on the ground. When [Plaintiff] asked if he could stand up because the fumes were in [his] face more now, [he] could hear [Officer] Ferguson say, "when you stop acting." [Plaintiff] thought [Officer Ferguson] was behind him but his voice was further away then and behind [Plaintiff]. [Plaintiff] looked over [his] left shoulder upward and saw a frown on [Officer Ferguson's] face while he was looking and touching in a scrolling motion on [Plaintiff's] phone. [Plaintiff] asked if [he] could stand up again and [Officer Ferguson] said "when you stop acting." [Plaintiff] got enraged and afraid for [his] life at the same time and fed up with the injustice and shouted that [he] was going to "stand up right now," the officers resisted [him], then eventually let [him] up, and [Plaintiff] demanded Ems be called and that [he] be taken to the hospital. [Plaintiff] was diagnosed with suffering from exposure to air pollution and received a 2000$ [sic] bill from the hospital weeks later. [Plaintiff] was taken to jail afterward and had to pay

> another 500 dollars to bonds by Amy because of the fruits
> of the poisonous tree planted initially by [Judge] McGhee
> and [ADA] Sykes and then watered and nurtured by [Judge]
> Hennit, and other named defendants the chain of events
> following [Plaintiff's] appearances of 2/5 and 3/26.

(Id. at 7-8.)

Police officers possess immunity from Section 1983 liability for money damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity protects officers who commit constitutional violations, but who, in light of clearly established law, could reasonably believe [their] actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . ." Hope v. Pelzer, 536 U.S 730, 739 (2002). Absent a constitutional violation, the qualified immunity analysis "ends right then and there." Abney v. Coe, 493 F.3d 412, 415 (4th Cir. 2007).

In this case, even liberally construed, the Complaints' assertions (quoted above) that Officer Ferguson "mistreated [Plaintiff] and exposed [him] unlawfully and intentionally to air pollution" (by requiring him to stand behind a vehicle) do not plausibly establish that Officer Ferguson unlawfully deprived Plaintiff of his constitutional rights. Therefore, the Court should

-34-

dismiss the Section 1983 claim against Officer Ferguson for failure to state a claim or, alternatively, based on qualified immunity.

### vi. Winston-Salem

In regards to Winston-Salem, the Complaints assert:

> City of Winston Salem is a municipality that is a political subdivision of the state of North Carolina, was the Employer of [Judge Hennit] and [Judge McGhee], and is and was at all times relevant to this complaint responsible for the policies, practices, and customs of the [Hall of Justice] and the Forsyth County District attorney's Office, [as well as the Clerk's Office].

(Docket Entry 2 at 3.) In addition, the Complaints allege that "[t]he Winston Salem municipality hiring [Judge Hennit] is [sic] liable for her actions in office under this local government municipal One Hour Standby Trial Notice policy . . . ." (Id. at 10.)

The Complaints thus seek damages from Winston-Salem based on the premise that it employs Judge Hennit and Judge McGhee and controls the operations of the Hall of Justice, the Clerk's Office, and the Forsyth County District Attorney's Office. However, Judge Hennit and Judge McGhee work as officials within the North Carolina judiciary, see N.C. Gen. Stat. §§ 7A-3 (consolidating all courts within North Carolina into unified "General Court of Justice"), 7A-4 (creating "superior court division" and "district court division" within "General Court of Justice"), 7A-41 (establishing superior court and providing for superior court judges), 7A-130 (establishing district courts), 7A-132 (providing for district court judges) and

the Hall of Justice, the Clerk's Office, and the Forsyth County District Attorney's Office all fall under the authority of the State of North Carolina (not local municipalities), <u>see</u> N.C. Gen. Stat. §§ 7A-3 (bringing all court operations under control of state), 7A-60 ("The State shall be divided into prosecutorial districts . . . . There shall be a district attorney for each prosecutorial district . . . ."), 7A-100 (establishing clerk's offices).  The Court therefore should dismiss all claims against Winston-Salem.

### vii. Hall of Justice, the Clerk's Office, and Forsyth County District Attorney's Office

"Inanimate objects, such as buildings, facilities, and grounds do not act under color of state law." <u>Jones v. Lexington Cty. Det. Ctr.</u>, 586 F. Supp. 2d 444, 451 (D.S.C. 2008) <u>recommendation adopted</u>, <u>id.</u> at 450; <u>see also</u> <u>Rhodes v. Seventh Cir. Solicitors [sic] Office</u>, Civ. No. 9:09-1863, 2009 WL 2588487 at *3 (D.S.C. Aug. 19, 2009) (unpublished) (dismissing Section 1983 claims against "Spartanburg County Public Defenders Office" and "Seventh Circuit Solicitor's Office" because, as "either buildings or facilities," they do not "act under color of state law").  Plaintiff thus cannot maintain a claim against the Hall of Justice, the Clerk's Office, or the Forsyth County District Attorney's Office.

Additionally, as explained in the preceding section, the Hall of Justice, the Clerk's Office, and the Forsyth County District Attorney's Office all operate as arms of North Carolina's state

government.  As such, they do not qualify as "persons" amenable to suit under Section 1983.  <u>See, e.g.,</u> <u>Grady v. Vickory</u>, Civ. No. 5:11-CT-3212, 2013 WL 12121997, at *1 (E.D.N.C. May 8, 2013) (unpublished) (citing <u>Will</u>, 491 U.S. at 71, and dismissing as frivolous Section 1983 claims against Wayne County Clerk's Office and Wayne County District Attorney's Office), <u>appeal dismissed</u>, 544 F. App'x 191 (4th Cir. 2013).

As a result, the Court should dismiss Plaintiff's Section 1983 claims against the Hall of Justice, the Clerk's Office, and the Forsyth County District Attorney's Office.

### viii. Insurance Companies

Lastly, the Complaints provide no factual matter to support any Section 1983 claim against the Insurance Companies.  (<u>See generally</u> Docket Entry 2.)  The Complaints state only that "[i]nsurance [c]ompanies giving surety bond of named defendants have a liability to cover the damages generated by named defendants but [Plaintiff] needs to initiate a discovery procedure for the names of companies." (<u>Id.</u> at 10.)  Because (for reasons shown above and below) no viable claims lie against any "named defendants," no "damages generated by named defendants" exist as to which the Insurance Companies "have a liability to cover."  (<u>Id.</u>)  As such, the Court should dismiss Plaintiff's Section 1983 claim against Insurance Companies.

**C. Section 1985 Claim**

In regard to the Section 1985 claim, the Complaints appear to proceed under Section 1985(3), as they offer no facts that could sustain a claim under Section 1985(1) or (2).[9]  With respect to Section 1985(3), the Complaints must show:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

Here, the Section 1985 claim rests on a conclusory assertion of "personal animas [sic] shared by the named defendants for [Plaintiff] not accepting the terms of their shared knowledgeable

---

[9]  "Section 1985(1) prohibits conspiracies to prevent individuals from holding office or discharging official duties." Stankowski v. Farley, 251 F. App'x 743, 747 n.1 (3d Cir. 2007). Meanwhile, Section 1985(2) addresses acts, in state court proceedings, involving "force, intimidation, or threat" against witnesses or jurors to obstruct justice because of race or other group-related bias.  42 U.S.C. § 1985(2); see also Kush v. Rutledge, 460 U.S. 719, 725-26 (1983) (explaining that the relevant portion of Section 1985(2) "contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws," further understood as "racial, or perhaps otherwise class-based, invidiously discriminatory animus" (internal quotation marks omitted)); Stankowski, 251 F. App'x 743, 747 n.1 (3d Cir. 2007) ("Section 1985(2) prohibits conspiracies to prevent witnesses from testifying in court, injuring witnesses who have testified, or attempting to influence or injure grand or petit jurors.").  The Complaints do not allege any such conduct.  (See Docket Entry 2.)

-38-

act to get [him] to accept the contract to plead guilty and for inquiring into the restraint on [his] liberties." (Docket Entry 2 at 6.) Such allegations do not establish that Defendants acted out of any racial or "specific class-based, invidiously discriminatory animus," Thomas, 841 F.3d at 637 (internal quotation marks omitted); see also Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) (concluding that Section 1985(3) requires proof of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"). Simply put, the Complaints' conclusory assertions of a conspiracy do not plausibly assert a claim under Section 1985(3). See Iqbal, 556 U.S. at 678.[10]

---

[10] Additionally, the Complaints request relief pursuant to 42 U.S.C. § 2000h-2. (Docket Entry 2 at 17.) More specifically, Plaintiff asks "[f]or the Attorney General to [i]ntervene pursuant to 42 U.S.C.A. (2000 H-2) and that the Attorney General [e]xplain the Constitutionality of this 1 hour trial notice policy pursuant to Rule 5.1 of the F.R.C.P." (Docket Entry 2 at 17.) The Complaints, however, contain no facts that plausibly suggest that Defendants discriminated against Plaintiff on the basis of race, color, religion, sex, or national origin. (See generally Docket Entry 2.) As such, any request for intervention by the Attorney General lacks merit. The Complaints' lack of factual matter showing racial discrimination similarly precludes relief based on the Complaints' reference to "42 U.S.C.A. 1981 allow[ing Plaintiff] the right to give evidence and receive full benefit of all laws and proceedings for the security of persons or property subject to like punishment" (id. at 2). See Aleman v. Chugach Support Servs. Inc., 485 F.3d 206, 211 (4th Cir. 2007) (explaining that Section 1981 addresses "racial discrimination"). Finally, "[b]ecause [he] has failed to state plausible claims for relief under Sections 1981, 198[3, and] 1985, . . . Plaintiff's claim for attorneys' fees under [42 U.S.C. §] 1988 is moot and must be dismissed." Duncan v. United Servs. Auto. Ass'n Ins., Civ. No. 14-2989, 2016 WL 3952091, at *8 (E.D. La. July 22, 2016) (unpublished).

## D. State-Law Claims

As a final matter, given the dismissal of the Complaints' federal claims (i.e., the Sections 1983 and 1985 claims), the Court should also dismiss any related state-law claims (e.g., obstruction of justice (see Docket Entry 2 at 2). Federal courts "have original jurisdiction of all civil actions arising under the Constitution [and] laws . . . of the United States." 28 U.S.C. § 1331.[11] "[I]n any civil action of which the [federal] courts have original jurisdiction, the [federal] courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Nevertheless, a federal court "may decline to exercise supplemental jurisdiction over a claim,"

_____

[11] Federal courts also maintain "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Under Section 1332(a), original "jurisdiction does not exist unless _each_ defendant is a citizen of a different State from _each_ plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (emphasis in original). In these cases, the Complaints assert that Plaintiff and at least one defendant qualify as citizens of North Carolina (Docket Entry 2 at 1), thus precluding original jurisdiction over these actions under Section 1332(a). Moreover, the Complaints do not purport to invoke diversity jurisdiction. (See id. at 2 (asserting "federal jurisdiction pursuant to [Section] 1331, over claims arising under [Section] 1983").) Accordingly, federal question jurisdiction provides the only source of the Court's original jurisdiction over these matters.

-40-

28 U.S.C. § 1367(c), if it dismisses "all claims over which [it] has original jurisdiction," 28 U.S.C. § 1367(c)(3).

Here, as discussed above, Plaintiff's federal claims (i.e., those claims arising under the Constitution and laws of the United States) warrant dismissal under 28 U.S.C. § 1915(e)(2). The Court thus may appropriately decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. <u>See</u> <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir. 1995) (explaining that, pursuant to Section 1367(c)(3), "a [federal] court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction,'" and that "[t]here are *no* situations wherein a federal court *must* retain jurisdiction over a state law claim, which would not by itself support jurisdiction" (emphasis in original)).

<u>**CONCLUSION**</u>

The Court should dismiss the federal claims in the Complaints under Section 1915(e)(2) as frivolous, for failing to state a claim, and as barred by various immunity doctrines, and should decline to exercise supplemental jurisdiction over the state claims in the Complaints under Section 1367(c).

**IT IS THEREFORE ORDERED** that Plaintiff's Applications for Leave to Proceed <u>In Forma Pauperis</u> (Docket Entry 1) are **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that the federal claims in these actions be dismissed pursuant to 28 U.S.C. § 1915(e)(2), and the state claims in these actions be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 15, 2019